780 F.2d 296
 27 Wage & Hour Cas. (BN 794, 54 USLW 2363
 Samuel BERLANTI, Appellant,
v.
Roger BODMAN, Individually and as the Commissioner of Labor,
State of New Jersey, Leonard Katz, Individually and as the
Supervisor, Public Contracts Section, Department of Labor
and Industry, State of New Jersey and John Does(s).
 No. 85-5231.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
Sept. 27, 1985.
 Decided Dec. 26, 1985.
 
 John J. Pribish and Patrick F. McAndrew, North Brunswick, N.J., for appellant.
 Irwin I. Kimmelman, Atty. Gen. of New Jersey, Lewis A. Scheindlin, Deputy Atty. Gen. of New Jersey, and James J. Ciancia, Asst. Atty. Gen. of New Jersey, Trenton, N.J., for appellees.
 Before GIBBONS, SLOVITER and STAPLETON, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 Issue
 
 1
 Samuel Berlanti, now deceased, who was president of Suffolk County Contractors, Inc. (Suffolk), was debarred from bidding for public works contracts in New Jersey. Before he died, he instituted an action under 42 U.S.C. Sec. 1983, against Roger Bodman and Leonard Katz, the officials of the New Jersey Department of Labor responsible for the debarment, alleging that his constitutional rights were violated thereby. Berlanti contends that the debarment of him personally was effected without adequate notice, hearing, or appropriate enabling legislation. The district court granted summary judgment for the defendants, relying on Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Plaintiff appeals.[1]
 
 II.
 Facts
 
 2
 A more detailed understanding of the facts and procedural posture is necessary to appreciate the opposing arguments of the parties. Suffolk, Berlanti's firm, was hired in 1980 as a subcontractor on a public works contract in Wall Township, New Jersey. When the principal contractor on the project defaulted, its surety, United States Fidelity and Guarantee Co. (USFG), was required to finish the project. Suffolk continued to work as a subcontractor under USFG.
 
 
 3
 One of Suffolk's employees complained about the wages to the Office of Wage and Hour Compliance of the New Jersey Department of Labor. It audited Suffolk and found that it had not paid the prevailing wage rate[2] on the Wall Township project, as required by the New Jersey Prevailing Wage Act, N.J.Stat.Ann. Sec. 34:11-56.25-56.46 (West 1965 & Supp.1985).
 
 
 4
 Roger Bodman, the New Jersey Commissioner of Labor, filed a complaint in state court against Suffolk and USFG seeking payment of the unpaid wages (the law action). In February 1983, the New Jersey court entered summary judgment for the Commissioner on this claim and ordered payment of $5,418.43. This decision was affirmed on appeal by the New Jersey Superior Court, Appellate Division.
 
 
 5
 During the same period, the New Jersey Department of Labor conducted an audit of Suffolk's wage payments on other projects and found additional violations of the Prevailing Wage Act. Leonard Katz, the supervisor of the public contract section of the Department of Labor, informed Berlanti that he had initiated debarment proceedings against Suffolk and Berlanti personally (the equity action). Under the statute, a debarred person or firm cannot bid on public contracts for three years. See N.J.Stat.Ann. Secs. 34:11-56.37-.38.
 
 
 6
 Berlanti and Suffolk requested a hearing on the proposed debarment and the matter was referred to a New Jersey administrative law judge. Suffolk did not deny that it had failed to pay the prevailing wages. The administrative law judge, finding no issue of material fact, granted summary judgment for the Commissioner, and concluded that both Berlanti and Suffolk should be debarred. On June 17, 1983, Berlanti was notified that their names had been placed on the debarment list.
 
 
 7
 Berlanti appealed this decision to the Appellate Division which reversed his debarment. The court held that the statute did not authorize the Commissioner to pierce the contractor's corporate veil in order to debar its president. Department of Labor v. Berlanti, 196 N.J.Super. 122, 132, 481 A.2d 830, 835 (App.Div.1984). The New Jersey Supreme Court granted certification, 99 N.J. 151, 491 A.2d 666 (1984), but dismissed the appeal on the ground that Berlanti's death made the matter moot. Department of Labor v. Berlanti, 101 N.J. 568, 503 A.2d 846 (1985). On the same day, however, in another case, that Court held that "the Commissioner's power to debar those individuals in corporate and non-corporate entities who are responsible for the failure to pay the prevailing wage on public works contracts is an incidental power necessary to achieve the legislative objectives that the Act is designed to implement," Department of Labor v. Titan Construction Co., 102 N.J. 1, 11 - 12, 504 A.2d 7, 12 - 13 (1985). It also held that if the Commissioner seeks to expand the Act to apply to responsible officers of corporate contractors, he must do so by rulemaking and establish regulations which both prescribe the grounds for debarment of such individuals and provide procedural safeguards, including notice and hearing. Id. at 16 - 18, 504 A.2d 16.
 
 
 8
 Berlanti filed this Sec.1983 action while the debarment action was pending in the Appellate Division. The complaint sought compensatory damages, punitive damages, injunctive relief and costs.[3] The district court abstained pending resolution of the state court proceeding. After the Appellate Division decision, the district court modified the stay to permit the parties to begin discovery. Subsequently, the defendants filed a motion for summary judgment on the ground that they were entitled to immunity. The court requested briefing on whether Berlanti's cause of action survived his death and whether the Sec. 1983 action must be dismissed pursuant to Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).
 
 
 9
 Three issues were before the district court: whether defendants, who had been sued personally or in their official capacities, were entitled to absolute immunity under either the Eleventh Amendment or any of the other immunity bases asserted; whether Berlanti's claims survived his death; and whether the Sec. 1983 action was precluded as a matter of law by the decision in Parratt v. Taylor.
 
 
 10
 The district court did not reach the immunity issue. It held that Berlanti's cause of action survived his death, a holding that has not been appealed. The court then turned to Parratt v. Taylor. It characterized the defendants' decision to debar Berlanti as an "unauthorized failure of state officials to follow prescribed procedures." App. at 15. The court reasoned that "since we are not dealing with an authorized state procedure in place" which led to the deprivation, the question was whether New Jersey provided adequate remedies. Id. Finding that the right of judicial review, which Berlanti had successfully obtained, and the New Jersey Tort Claims Act provided adequate post-deprivation process, the court held that there was no actionable conduct under Sec. 1983, and gave summary judgment for defendants.
 
 III.
 Discussion
 
 11
 On appeal, the defendants urge that Berlanti's claim of a constitutional violation fails because under New Jersey law, there is no property right to bid for state contracts. Defendants did not raise this issue in their motion for summary judgment, and the district court did not discuss it. Ordinarily, therefore, we would not reach this issue but because it is an issue of law that could be dispositive of this appeal and would foreclose any remand, the interests of judicial economy require addressing it at this time.
 
 
 12
 Property interests are created and defined by state law. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982), the Supreme Court stated that "[t]he hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' " As the Court explained in Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978), "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."
 
 
 13
 The defendants rely principally on the statement by the New Jersey Superior Court in Department of Labor and Industry v. Union Paving & Construction Co., 168 N.J.Super. 19, 401 A.2d 698 (App.Div.1979), that a debarred contractor does not have a property interest in being allowed to bid for and be awarded public works contracts. Id. at 29-30, 401 A.2d at 703-04. Defendants also rely on the opinion of Chief Justice Weintraub in Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 284 A.2d 161 (1971), cert. denied, 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972), which stressed that the state has the ability to purchase goods and services from whomever it choses. Id. at 478-79, 284 A.2d at 164-65.
 
 
 14
 We need not decide whether these opinions, standing alone, support defendants' position because we conclude that the implication of the language, if not the holding, in the New Jersey Supreme Court's recent decision in Department of Labor v. Titan Construction Company, 102 N.J. 1, 504 A.2d 7 (1985), is that debarment of a corporate officer effects a deprivation of a property right. In Titan Construction, the Court treated debarment of an individual as triggering due process procedures. It stated that "[f]undamental principles of due process mandate that standards must be established to define the conduct that will result in individual debarment." Id. at 17, 504 A.2d 16 (emphasis added). It continued, "Procedural safeguards, including notice, hearing, the right to present evidence, and the right to cross examine an adverse witness must be afforded to those individuals facing debarment. Gonzalez v. Freeman [334 F.2d 570, 578 (D.C.Cir.1964) ]." Id.
 
 
 15
 The citation to Gonzalez v. Freeman is significant. That decision, authored by Chief Justice Burger when he was a Circuit Judge, held that "to say that there is no 'right' to government contracts" cannot mean that an individual "is not entitled to challenge the processes and the evidence before he is officially declared ineligible for government contracts." 334 F.2d at 574. Gonzales was held inapplicable to debarment under the New Jersey Prevailing Wage Act by the New Jersey Superior Court in Union Paving, 168 N.J.Super. at 30-31, 401 A.2d at 703-04. Its citation with approval by the New Jersey Supreme Court in Titan Construction suggests otherwise.
 
 
 16
 Furthermore, the state does not have unfettered discretion to bar individual corporate officers from bidding for New Jersey contracts but, as Titan Construction makes clear, may do so only "for cause." That is the clear intent of the debarment statute itself, since it provides that no person can be debarred unless s/he has been found to have failed to pay the prevailing wage. See N.J.Stat.Ann. Sec. 34:11-56.37. We hold, therefore, that Berlanti had a property interest in not being arbitrarily debarred; this interest entitled him to some procedural protection under the due process clause.
 
 
 17
 We turn, therefore, to the district court's characterization of defendants' alleged failure to accord Berlanti with notice and a hearing on his debarment as a "random and unauthorized act," as to which Parratt v. Taylor held post-deprivation process is sufficient. In Stana v. School District of City of Pittsburgh, 775 F.2d 122 (3d Cir.1985), this court recently had occasion to consider the meaning of "random and unauthorized act." In Stana we held that the act of a supervisory school district employee in bypassing an eligible teacher for a vacancy was not the type of "random and unauthorized act" for which a predeprivation hearing was not practicable. We stated, "Patently, when the acts at issue were those of an official in a supervisory position, acting within the area of his authority, the governmental entity was in a position to provide some predeprivation process." Stana, 775 F.2d at 130.
 
 
 18
 The holding in Stana is equally applicable here. The defendants were highly placed responsible supervisory officials. Bodman was the Commissioner of Labor and Katz was the Supervisor of the Public Contracts Section of the Department of Labor. Katz' affidavit, filed in support of the Motion for Summary Judgment, makes clear that "the Commissioner of Labor has consistently listed for debarment all officers and owners of corporations which are found to have failed to pay the prevailing wage." First Affidavit of Leonard Katz, App. at 85. Moreover, in proceeding against Berlanti personally, Katz "consulted with [his] supervisor, William Clark, Director of Workplace Standards for the Department of Labor, and the Office of the Attorney General, and received approval to proceed." See Second Affidavit of Leonard Katz, App. at 28-29. Thus we are not dealing with the type of "random and unauthorized act" as a prison guard's negligent loss of property, as in Parratt v. Taylor, nor with other unpredictable acts, such as a police officer's action in making an arrest with a cocked pistol contrary to his training and the established state procedures, see Wilson v. Beebe, 770 F.2d 578, 584 (6th Cir.1985) (in banc), to which the Parratt holding would apply.
 
 
 19
 The district court reasoned that the debarment of Berlanti was an unauthorized act because "the New Jersey administrative procedure law does provide a procedure or mechanism to be followed in administrative situations." App. at 17. The court was apparently referring to the New Jersey Administrative Procedure Act, N.J.Stat.Ann. Secs. 52:14B-1-15 (West 1970), which provides that parties to any "contested case" may "respond, appear and present evidence and argument on all issues involved." Id. Sec. 52:14B-9. However, as our decision in Hicks v. Feeney, 770 F.2d 375 (3d Cir.1985) makes clear, the fact that state officials may have violated procedure established under state law does not constitute a "random and unauthorized act" within Parratt 's post-deprivation remedy exception to Sec. 1983 violations. We stated, "[i]f ... the deprivation occurs under color of state law pursuant to state law, custom, or usage, Parratt and Hudson do not apply because the state is able to anticipate the circumstances in which the loss will occur and to provide a meaningful hearing before the deprivation takes place. Parratt, 451 U.S. at 541, 101 S.Ct. at 1916; Hudson [v. Palmer, --- U.S. at ----, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984) ]." Hicks v. Feeney, 770 F.2d at 378. Katz' affidavit adequately establishes that the alleged deprivation in this case occurred as a matter of custom or usage. See also Gregory v. Town of Pittsfield, --- U.S. ----, 105 S.Ct. 1380, 1382, 84 L.Ed.2d 399 (1985) (O'Connor, J. for three Justices dissenting from denial of a petition for writ of certiorari) (Parratt inapplicable where deprivations "reflected the town's policy" despite state law to the contrary).
 
 
 20
 The district court concluded that because the state provided adequate post-deprivation remedies in the possibility of review to the Appellate Division and the availability of the New Jersey Tort Claims Act, no due process violation occurred. We need not decide whether the failure of the review mechanism to provide for damages for the period of debarment and the possible immunities under the Tort Claims Act make them inadequate remedies, because we conclude that in this case the availability of post-deprivation remedies is irrelevant. As we held in Stana, "if the government entity could have, but did not, provide predeprivation procedures, a Sec. 1983 action complaining of the lack of procedural due process may be maintained in federal court, notwithstanding the availability of state judicial routes as well." Stana, 775 F.2d at 130.
 
 
 21
 It follows that this matter must be remanded to the district court. If that court reaches the merits it must consider whether Berlanti was in fact deprived of notice and a hearing, as alleged,[4] and what process was due.[5] On the latter issue, it will have to consider whether "this case falls within the extremely narrow lines reserved for the limited situations where the hearing may properly be postponed until after the deprivation has been effected...." Stana, 775 F.2d at 127. In Stana we relied on the Supreme Court's opinion in Cleveland Board of Education v. Loudermill, --- U.S. ----, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), to apply the requisite balancing under Matthews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), since both Loudermill and Stana involved public employment. We believe the district court will be in a better position to address whether the right to bid for public contracts is sufficiently analogous to public employment to require the same result, or whether this situation is distinguishable.
 
 IV.
 Conclusion
 
 22
 As Judge Wisdom has recently stated, "Parratt v. Taylor is not a magic wand that can make any section 1983 action resembling a tort suit disappear into thin air." Augustine v. Doe, 740 F.2d 322, 329 (5th Cir.1984). In that case the court concluded, as we do here, that "in the context of procedural due process, Parratt applies only when the nature of the challenged conduct is such that the provision of predeprivation procedural safeguards is impracticable or infeasible." Id.
 
 
 23
 For the reasons set forth above, we will reverse the district court's decision granting summary judgment for the defendants and remand to that court for further proceedings. On remand, the court may consider defendants' claims of immunity and any other defense interposed.
 
 
 
 [1]
 According to the record, Berlanti died in mid-December, 1984. At the time of this appeal, which was filed on March 29, 1985, neither the district court nor the plaintiff's estate had sought a substitution of parties. Although the appellees mention these facts in their brief, see Brief for Appellees at 13, apparently no party requested substitution within 90 days after the death, as required by Fed.R.Civ.P. 25(a). This issue may be considered by the district court on remand
 
 
 [2]
 Section 34:11-56.26(9) of the New Jersey Statutes Annotated defines "prevailing wage" as "the wage rate paid by virtue of collective bargaining agreements by employers employing a majority of workmen of that craft or trade subject to collective bargaining agreements, in the locality in which the public work is done." N.J.Stat.Ann. Sec. 34:11-56.26(9) (West 1965). Contractors and subcontractors on every public works project worth in excess of $2,000 are required to pay the prevailing wage. Id. at Sec. 34:11-56.27
 
 
 [3]
 The complaint alleged a deprivation of property and liberty interests protected by the Due Process Clause of the Fourteenth Amendment and a conspiracy to deprive Berlanti of his rights to equal protection and due process in violation of 42 U.S.C. Sec. 1985(2). Plaintiff has not proceeded on this claim. Section 1985(2) is patently inapplicable, since it applies only to conspiracies to obstruct justice or intimidate parties, witnesses or jurors. If plaintiff intended to allege a claim under Sec. 1985(3), this would also be inapplicable because that section covers conspiracies to deprive a person of his or her rights to equal protection or equal privileges and immunities by conspirators who have "some racial, or perhaps otherwise class-based, invidiously discriminatory animus...." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Berlanti's complaint does not allege any such motivation
 
 
 [4]
 The Prevailing Wage Act gives "any contractor or subcontractor" listed for debarment the right to a hearing if the listed person "denies that a failure to pay the prevailing wage has occurred...." N.J.Stat.Ann. Sec. 34:11-56.37. In Titan Construction, the New Jersey Supreme Court stated that the Act "is ... silent as to the right of [corporate] officers to a hearing prior to debarment." Titan Construction, 102 N.J. 17, 504 A.2d 16. Neither Berlanti nor the individuals involved in Titan Construction were afforded a hearing as to their individual responsibilities. Although the opinion in Titan Construction suggests that one would not have been afforded even if requested, this is a subject for further factfinding as to Berlanti by the district court
 
 
 [5]
 Defendants correctly state that to the extent the complaint alleges that defendants' conduct merely violated state law, it fails to state a claim under 42 U.S.C. Sec. 1983. That statute remedies deprivations of rights secured by the Constitution or laws of the United States. Maine v. Thiboutot, 448 U.S. 1, 7, 100 S.Ct. 2502, 2505, 65 L.Ed.2d 555 (1984). As we stated in Cohen v. City of Philadelphia, 736 F.2d 81, 86 (3d Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), substantive mistakes by administrative bodies in applying local ordinances do not create a federal claim. Thus, the holding of the New Jersey Supreme Court in Titan Construction that under the New Jersey statute, the Commissioner could not debar corporate officers without rulemaking does not give rise to a Sec. 1983 claim by debarred officers