BROWN, Barbara, Appellant,

v.

TRENCH, Lucille, Individually and as Commissioner, Bucks County, PA, and Fonash, Carl, Individually and as Commissioner, Bucks County, PA, and Warren, Andrew L., Individually, and as Commissioner, Bucks County, PA, and Fischer, Celia, Individually, and as Public Information Specialist, also called Assistant Public Information Director, Bucks County, PA, and the Board of Commissioners of Bucks County, and County of Bucks.

No. 85–1482.

United States Court of Appeals, Third Circuit.

Argued March 17, 1986.

Decided April 7, 1986.

Michael G. Cullen (argued), Stapleton, Colden & Cullen, Drexel Hill, Pa., for appellant.

Ellis H. Katz (argued), Richard D. Adamson, Curtin and Heefner, Morrisville, Pa., for appellees.

Before HUNTER, MANSMANN, Circuit Judges, and DIAMOND,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Barbara Brown was appointed secretary in the office of Public Information of Bucks County in July, 1981. In February, 1982 she became the Assistant Director of Public Information for Bucks County. Her duties included preparing and distributing press releases, contacting media representatives, and promoting county projects. Her supervisor was Hal Lefcourt, the County Public Information Officer. Lefcourt had to approve all press releases. He rated Brown's job performance as satisfactory.

Brown is affiliated with the Republican Party. On January 3, 1984 her employment with Bucks County was terminated by the newly elected Democratic Bucks County Commissioners. All of the other people fired at this time were Republicans and all of those hired were Democrats. Brown was not given a written notice explaining the termination or any hearing on the matter.

Brown brought suit under 42 U.S.C. § 1983 alleging that, because she had been fired based on her political beliefs, her first amendment rights had been violated. She also claimed that she had a property interest in her job and that she had been deprived of that interest without due process of law. The district court found no first amendment violation because, under *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), her job was one in which party allegiance was a necessary requirement for proper performance. Therefore, she could be dismissed from the job based on her party affiliation. The court did find that Brown had a property interest in her job but concluded that she had not been denied due process because she had been given the opportunity for post-deprivation review in the state courts.

The Supreme Court has held that, in general the first amendment rights of public employees are violated if they are dismissed solely because of their political affiliation. *See Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (assistant public defender could not be dismissed); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (sheriff could not be dismissed). At the same time the court has held that there are certain exceptions to this rule so that some patronage dismissals are permissible without any offense to the first amendment. In *Elrod,* the Court explained that such an exception existed for an employee who "acts as an advisor or formulates plans for the implementation of broad goals." 427 U.S. at 368, 96 S.Ct. at 2687. *Elrod* was viewed as creating an exception for employees in a policymaking or confidential position. In *Branti,* the Court spoke more broadly in stating that the ultimate "question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518, 100 S.Ct. at 1295. The relevant inquiry is to the function of the public office in question and not the actual volved. *See Mummau v. Ranck*, 531 F.Supp. 402 (E.D.Pa.), *aff'd.* 687 F.2d 9 (3d Cir.1982) (per curiam); *see also Gannon v. Daley,* 561 F.Supp. 1377 (N.D.Ill.1983). The fact that an employee is in a policymaking or confidential position is relevant to the question of whether political affil-

---

* Honorable Gustave Diamond, United States District Judge for the Western District of Pennsylvania, sitting by designation.

iation is a necessary job requirement but this fact is no longer dispositive after *Branti.*

This court has found that, under *Branti* and *Elrod,* political affiliation is a proper ground for dismissal of a city solicitor, *see Ness v. Marshall,* 660 F.2d 517 (3d Cir. 1981), and an assistant district attorney, *see Mummau v. Ranck.* In *Ness* we concluded that the city solicitor's duties of rendering legal opinions, drafting ordinances, and negotiating contracts made his position intimately related to city policy. 660 F.2d at 522. We relied on our reasoning in *Ness* to find that the position of assistant district attorney likewise could require political affiliation for effective performance of the job. A district court has found that neither a superintendent of roads, *see Abraham v. Pekarski,* 537 F.Supp. 858, 865 (E.D.Pa.1982), *aff'd,* 728 F.2d 167 (3d Cir.), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984), nor a bookkeeper identified as "Second Deputy Clerk" could be dismissed based on political affiliation. *See Mitman v. Glascott,* 557 F.Supp. 429 (E.D.Pa.1983), *aff'd,* 732 F.2d 146 (3d Cir.1984).

Courts outside of this circuit have considered a variety of government positions to determine whether they fall within the patronage exception of *Elrod* and *Branti.* Employees in the following positions have been found subject to removal based on their political affiliation: fee agent, *see Sweeney v. Bond,* 669 F.2d 542 (8th Cir.) *cert. denied,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); Senior Citizens Coordinator, *see Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982); Deputy Parks Commissioner, *see Ecker v. Cohalan,* 542 F.Supp. 896 (E.D.N.Y.1982); Deputy Sheriff, *see Joyner v. Lancaster,* 553 F.Supp. 809 (M.D.N.C.1982); Director of the Farmers Home Administration, *see Brunton v. United States,* 518 F.Supp. 223 (S.D.Ohio 1981); Worker's Compensation Law Judge, *see Garretto v. Cooperman,* 510 F.Supp. 816 (S.D.N.Y.1981); city corporation counsel, *see Bavoso v. Harding,* 507 F.Supp. 313 (S.D.N.Y.1980). Employees in

the following positions were found not subject to dismissal under *Elrod* and *Branti*: branch manager for the state Department of Revenue, *see Gibbons v. Bond,* 523 F.Supp. 843 (W.D.Mo.1981), *aff'd,* 668 F.2d 967 (8th Cir.1982); Deputy Sheriff, *see Barrett v. Thomas,* 649 F.2d 1193 (5th Cir. 1981), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982); supervisor of a county branch of the Auditor's office, *see DeLaCruz v. Pruitt,* 590 F.Supp. 1296 (N.D.Ind.1984); administrative assistant to the State's Attorney of Cook County, *see Gannon v. Daley,* 561 F.Supp. 1377 (N.D. Ill.1983); Assistant Director of the Division of Motor Vehicle and Drivers Licensing, *see Crisp v. Bond,* 536 F.Supp. 137 (W.D.Mo. 1982); City Clerk, *see Visser v. Magnarelli,* 530 F.Supp. 1165 (N.D.N.Y.1982).

While *Branti* provides us with a "test" the Supreme Court has not specified the particular factors which indicate that a position falls within the *Branti* test. Factors suggested by other courts include whether the employee's duties are simply clerical or related to law enforcement, *see Barrett,* 649 F.2d at 1201, nondiscretionary or technical, *see Visser,* 530 F.Supp. at 1171. Courts have also considered whether the employee participates in Council discussions, *see Visser,* 530 F.Supp. at 1167, or other meetings, whether the employee prepares budgets, or has authority to hire or fire employees, *see DeLaCruz,* 590 F.Supp. at 1304, the salary of the employee, and the employee's power to control others and to speak in the name of policymakers. *See Ecker,* 542 F.Supp. at 901. In *Crisp,* the Court held that the Assistant Director of the Division of Motor Vehicle and Drivers Licensing could not be fired because he had no confidential duties even though he supervised employees, prepared the budget, was liason with the public, attended conferences, and analyzed administrative procedures and work standards. 536 F.Supp. at 139. *See also Gibbons,* 523 F.Supp. at 852. The key factor seems to be not whether the employee was a supervisor or had a great deal of responsibility but whether the employee has "meaningful input into decision

making concerning the nature and scope of a major township program." *Nekolny,* 653 F.2d at 1170.

Brown reports to the Director of Public Information for assignments. The Director reports to the Chief Clerk who in turn reports directly to the Commissioners who are the policymakers in the county. Brown contends that she is only a conduit and collator of data and information from other departments. Since none of her work is released to the public unless reviewed by her supervisor she likens her position to that of an untitled journalist for a wire service. Her writings are based on information from other departments and are never released until they are reviewed by both her supervisor and by the Commissioners.

■ There is no dispute over the fact, however, that Brown was responsible for writing press releases. The court below found that the duties of the position also required her to write speeches, communicate with legislators, and, most important, to present the views of the Commissioners to the press and public on a daily basis. The court below correctly determined that Brown's position is one which cannot be performed effectively except by someone who shares the political beliefs of the Commissioners. While some of her duties were only technical or clerical in nature, her principal duty was to act as spokesman for the Commissioners and help promote county projects. Brown could, therefore, be dismissed because of her political affiliation without any violation of her first amendment rights.

■ Even though Brown could be dismissed without infringement of her first amendment rights, she was entitled to due process if her expectation of continued employment constituted a property interest. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

In January, 1980 the County adopted the Revised Personnel Policy Procedures. Paragraph 18 provides that "... Permanent employees are not subject to separation except for cause, curtailment of work or available funds, or changes in the organizational structure or purposes.... The employee shall then receive written notice of the grounds for discharge." Brown contends that adoption of these personnel procedures gave her a property interest in her job.

■ State law determines whether such a property interest exists. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In Pennsylvania, public employees generally have at will status and cannot be provided with tenure unless there is express legislative authority for doing so. *See Perri v. Aytch,* 724 F.2d 362 (3d Cir.1983); *Rosenthal v. Rizzo,* 555 F.2d 390 (3d Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977); *Scott v. Phila. Parking Authority,* 402 Pa. 151, 154, 166 A.2d 278, 280 (1960); *Mahoney v. Phila. Housing Authority,* 13 Pa. Commonwealth Ct. 243, 320 A.2d 459 (1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975).

The County claims that although this court has found that a just cause provision creates a property right, *see Perri v. Aytch,* 724 F.2d 362, 366 (3d Cir.1983), Brown has not shown that her public employer had any legislative authority to create such a property interest. The legislature has provided that "Appointees to county offices or positions ... shall be subject to removal at the pleasure of the appointing power...." 16 P.S. § 450(b). However, they have also provided that "The board of commissioners may adopt resolutions and ordinances prescribing the manner in which powers of the county shall be carried out and generally regulating the affairs of the county." 16 P.S. § 509(a). Brown contends that this statute constitutes legislative authority for the County to pass resolutions such as the just cause provision in its Personnel Procedures. The County responds that, although § 509 permits the County to pass resolutions related to its "powers," the granting of a tenure

relationship is not a power of the County. The County contends that such a power can only be given by language specifically authorizing the county to grant tenure. This court found such enabling language in *Perri* in the somewhat general provisions of the Judicial Code, 42 Pa.C.S. § 1724(a). This statute gives the judiciary "general supervisory and administrative authority over the personnel of the system ..." but makes no specific reference to tenure relationships or for cause provisions. Section 509(a) grants the County authority to adopt resolutions for "generally regulating the affairs of the county" but does not refer specifically to tenure or to employees. The court below relied on *Abraham v. Pekarski*, 728 F.2d 167 (3d Cir.), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984) to find that Brown did have a property interest. The court below believed that the county was given the authority to grant tenure in 2 Pa.Cons.Stat.Ann. § 752 (Purdon Supp.1985) which provides:

> Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

■ It is not clear to us how the court could find that § 752 gave the county authority to grant tenure. However, we do agree with the court below that *Abraham v. Pekarski* supports the claim that Brown had a property interest. In *Abraham*, the Director of Roads and Public Property of Bristol Township, Bucks County was fired by the Board of Commissioners. The court in *Abraham* examined Pennsylvania law and determined that a "just cause" provision gives rise to a property right. *See Abraham*, 537 F.Supp. at 869, 728 F.2d at 170–71. The case before us cannot be distinguished on its facts from *Abraham*. We conclude, therefore, that the County's

just cause provision did give Brown a property right.

■ The court below found that even though Brown had a property interest her due process rights had not been violated because she could have sought a remedy in state court. The court found support for this position in *Cohen v. City of Philadelphia*, 736 F.2d 81 (3d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). In *Cohen* this court believed that state-provided post-termination remedies were sufficient to meet the requirements of due process. In light of *Cleveland Bd. of Education v. Loudermill*, —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) this court, in *Stana v. School District of the City of Pittsburgh*, 775 F.2d 122 (3d Cir. 1985), determined that pre-termination procedures are a requirement of due process where not impracticable. Post-deprivation procedures meet the requirements of due process when the claim arises from the random and unauthorized misconduct of state officials. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). If the property right is infringed on because of intentional action pursuant to a state procedure, a pre-deprivation hearing is required. *See Loudermill; Stana*. In *Stana* we stated "patently, when the acts at issue were those of an official in a supervisory position, the governmental entity was in a position to provide some pre-deprivation process." *Stana*, 775 F.2d at 130. There is no reason that Brown could not have been given a pre-termination hearing. The County contends that no pre-termination hearing is required because although the Commissioners acted intentionally Brown is not alleging that they acted according to local law. It is true that in *Loudermill* the terminations were made pursuant to established procedures. But Brown's situation cannot be distinguished from that of *Stana*.[1] In *Stana* there was an eligibility list for employment as a teacher. The supervisor hired

---

1. We note that the district court's decision in the case before us was made before our decision in *Stana*.

someone with a lower score than Stana because the supervisor had heard a bad recommendation of Stana. However, according to procedures, eligibility was based on scores and not on undisclosed recommendations. An act is not random and unauthorized simply because it was not pursuant to a state law or procedure. *See Berlanti v. Bodman,* 780 F.2d 296 (3d Cir. 1985); *Hicks v. Feeney,* 770 F.2d 375 (3d Cir.1985). The action of the county in this case cannot be distinguished from the actions of the school supervisor in *Stana.*

We agree with the district court finding that Brown's termination was not in violation of her first amendment rights. We also agree with the court below that Brown had a property right in her continued employment. Unlike the lower court, however, we find that her due process rights were violated because she was not granted a pre-termination hearing. We, therefore, reverse and remand for reconsideration in light of *Stana* and *Berlanti.*